UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | |
|---|---|
| DAVID DOLEN, Individually, and ) <br> DAVID DOLEN, as Administrator ) <br> of the Estate of LISA KAY ) <br> PEAVYHOUSE DOLEN, Deceased, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> TEXAS EASTERN TRANSMISSION, ) <br> LP, et al., ) <br> ) <br> Defendants. ) | Civil Case No. <br> 5:20-cv-96-JMH <br> <br> **MEMORANDUM** <br> **OPINION AND ORDER** |

\*\*\*

Plaintiffs David Dolen, individually, and David Dolen, as administrator of the estate of Lisa Kay Peavyhouse Dolen, deceased, ("the Dolens") move the Court to remand this case to the Lincoln Circuit Court, [DE 7], and for leave to file a proposed First Amended Complaint [DE 16-1], [DE 16]. In addition to the aforementioned Motions [DE 7; DE 16], Plaintiffs have filed an Unopposed Motion for Status Conference [DE 37] requesting a status conference to discuss moving deadlines for discovery and receiving a decision on their pending Motion for Leave to Amend [DE 16] prior to their upcoming mediation on May 21, 2021. The Court will deny both Plaintiffs' Motion to Remand to State Court [DE 7] and Motion for Leave to File First Amended Complaint [DE 16]. The Court will also deny the request for a status conference because Plaintiffs'

issues mentioned in their Unopposed Motion for Status Conference [DE 37] shall be addressed herein.

## I. DISCUSSION

This case arises from an August 1, 2019, pipeline explosion. Plaintiffs initially filed their Complaint [DE 1-1, at 1-15] against Defendants Defendant Texas Eastern Transmission, LP ("TETLP"), Spectra Energy Operating Company, LLC, Spectra Energy Transmission Resources, LLC, Spectra Energy Corp., Enbridge (U.S.) Inc., and Unknown Danville Compressor Station Operator ("the Operator") in Lincoln Circuit Court on February 18, 2020. However, on March 16, 2020, TETLP filed a Notice of Removal [DE 1] in this Court arguing the Operator, an alleged Kentucky resident and citizen, is a fictitious defendant who was joined to destroy diversity and the claim against the Operator is legally deficient because the Operator is not individually liable for Plaintiffs' injuries under Kentucky law. Aside from Plaintiffs and the Operator, no other party is a Kentucky resident or citizen, is incorporated in Kentucky, or has a principal place of business in Kentucky, so the identity of the Operator is crucial to the determination of whether complete diversity exists to give this Court jurisdiction over this matter.

Plaintiffs' original Complaint [DE 1-1, at 1-15] identifies the Operator as follows:

> Defendant, Unknown Danville Compressor Station Operator, is upon information and belief a resident and citizen of the Commonwealth of Kentucky and will be more accurately named once his or her identity is provided in discovery . . . [and] is a necessary party to this matter because it is believed that his/her negligent, grossly negligent, wanton and/or reckless actions contributed to Plaintiffs' injuries.

[DE 1-1, at 4-5]. Specifically, Plaintiffs allege, "Personnel at the Danville, Kentucky compressor station, including but not limited to Unknown Danville Compressor Station Operator, eventually closed the Pipeline discharge valve north of the failure site, and other personnel later closed a valve elsewhere on the line." *Id*. at 6. Plaintiffs allege Defendants were negligent by breaching their duty of care in the following ways that are allegedly pertinent to the Operator:

> "b. failing to properly inspect, monitor, assess, evaluate, and/or maintain the Pipeline, its integrity and the surrounding area, and failing to ensure the proper inspection, monitoring, assessment, evaluation, and/or maintenance of the same;
> c. failure to adequately and/or properly secure the area surrounding the Pipeline prior to and during its use
> d. failing to identity and/or correct hazardous conditions in the Pipeline, its integrity and/or the area surrounding same;
> . . .
> g. failing to operate the Pipeline in a safe manner and in a safe condition;
> . . .
> r. failure to properly monitor gas flow and/or take corrective action."

[DE 7-1, at 3 (quoting [DE 1-1, at 9-10])]. The Complaint [DE 1-1, at 1-15] also includes the following allegations regarding Plaintiffs' respondeat superior claims:

> "50. Defendants, by and through their employees, agents
> and/or representatives, including but not limited to
> Defendant, Unknown Danville Compressor Station Operator,
> acted or failed to act in such a negligent, reckless
> and/or intentional manner so as to cause Plaintiffs to
> suffer serious bodily and emotional injury.
> 51. Upon information and belief, on the date of the
> Pipeline failure and explosion, Defendants' employees,
> agents and/or representatives, including but not limited
> to Defendant, Unknown Danville Compressor Station
> Operator, were acting in the course and scope of their
> employment with Defendants.
> 52. Defendants authorized, ratified and/or should have
> anticipated the conduct of their employees, including
> but not limited to the Unknown Danville Compressor
> Station Operator, subjecting Defendants to punitive
> damages.
> 53. That the doctrine of respondeat superior applies to
> Defendants for the negligent, reckless and/or
> intentional acts and/or failure to act of their
> employees, including but not limited to Defendant,
> Unknown Danville Compressor Station Operator."

*Id*. at 3-4 (quoting [DE 1-1, at 13])].

### A. **MOTION TO REMAND**

In Plaintiffs' Memorandum in Support of Motion to Remand [DE 7-1], Plaintiffs argue they have described the Operator to the best of their ability and that TETLP is better situated to identify the Operator because TETLP should know who turned the valve off at the compression station. However, TETLP contests that even if it were able to ascertain the identity of the Operator, it is unable to make such an effort or divulge the results of such an investigation because the National Transportation Safety Board's ("NTSB") investigation is still ongoing. [DE 11, at 18 (citing 49 C.F.R. § 831.13 (prohibiting parties from releasing information

4

obtained during an NTSB investigation prior to the NTSB's public release of information except under limited circumstances))].

In reply, Plaintiffs cite the NTSB Preliminary Report [DE 13-1], which states:

> "The Danville compressor station operator also received the alarm. The operator told investigators he could see the fire from the compressor station. In response to the accident, Enbridge personnel isolated the affected pipeline segment while the Lincoln County Fire Protection District worked to evacuate residents and minimize the spread of the fire. The isolation of the affected segment required closing one valve at the Danville compressor station, located 3.5 miles north of the rupture, and manually closing another valve located about 19 miles south of the Danville compressor station."

[DE 13, at 5 (quoting [DE 13-1])]. Plaintiffs add, "[T]he Corrective Action Order issued to TETLP on or about August 8, 2019, described that 'TETLP's Danville Compressor Station personnel closed the Line 15 discharge valve located north of the failure cite.'" *Id.* (quoting [DE 13-2, at 3])]. Plaintiffs assert that based on the foregoing information, it is evident that the Operator is the individual who closed the discharge valve, so "his identity should be considered in evaluating party citizenship for diversity jurisdiction." *Id.*

Federal courts have limited jurisdiction. *Gross v. Hougland*, 712 F.2d 1034, 1036 (6th Cir. 1983). If there are any doubts as to whether federal jurisdiction exists, the decision should be construed in favor of remanding the matter to state court. *Shamrock*

5

*Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 109 (1941); *Cole v. Great Atlantic & Pacific Tea Co.*, 728 F. Supp. 1305, 1307 (E.D. Ky. 1990) (citations omitted); *Allen v. Frasure Creek Mining Co.*, Civil No: 12-110-GFVT, 2012 WL 12924816, at *1 (E.D. Ky. Sept. 19, 2012). In determining whether to remand a case to state court, courts must consider whether federal jurisdiction existed at the time the removing party filed the notice of removal. *Ahearn v. Charter Twp. of Bloomfield*, 100 F.3d 451, 453 (6th Cir. 1996).

"A defendant may remove a civil action brought in state court to federal court only if the action is one over which the federal court could have exercised original jurisdiction." *Allen*, 2012 WL 12924816, at *1 (citing 28 U.S.C. §§ 1441, 1446). District courts have original diversity jurisdiction over all civil actions where "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different states." 28 U.S.C. § 1332(a)(1). Diversity jurisdiction requires that "'all parties on one side of the litigation [must be] of a different citizenship from all parties to the other side of the litigation.'" *Coyne v. Amer. Tobacco Co.*, 183 F.3d 488, 492 (6th Cir. 1999) (citations omitted); *see also Lincoln Property Co. v. Roche*, 546 U.S. 81, 89 (2005). The burden of establishing the right to removal is on the removing party. *See Coyne*, 183 F.3d at 493.

Here, Plaintiffs argue that the issue is not whether TETLP can disclose the identity of the Operator prior to the conclusion of the NTSB investigation or whether TETLP is aware of the Operator's identity. [DE 13, at 6]. Instead, Plaintiff proposes, "The issue is 'whether [TETLP] was in a better position than the plaintiff to ascertain the citizenship of the non-diverse defendant at the commencement of the action in state court . . . .'" *Id.* (quoting *Musial v. PTC Alliance Corp.*, 2008 WL 2559300, at *3 (W.D. Ky. 2008)). Indeed, "Section 1441 provides that 'the citizenship of defendants sued under fictitious names shall be disregarded,' 28 U.S.C. § 1441(a), unless the ''complaint provide[s] a description of a fictitious defendant in such a way that his identity could not be reasonably questioned.''" *Allen*, 2012 WL 12924816, at *2 (quoting *Harrison v. Allstate Indem. Co.*, 2012 WL 1029437, at * 2 (E.D. Ky. 2012) (quoting *Musial*, 2008 WL 2559300, at *3)). Furthermore "whether ''the defendant was in a better position than the plaintiff to ascertain the citizenship of the non-diverse defendant at the commencement of the action in state court is a factor that weighs in favor of considering a fictitious defendant's citizenship for diversity purposes.''" *Id.*

Plaintiffs' description of the Operator is such that the individual's identity can be reasonably questioned. Specifically, the Operator at TETLP's Danville Compressor Station may have closed the valve the day of the explosion, but it is also possible that

7

other personnel may have closed the valve. Plaintiffs' own Complaint [DE 1-1] specifies, "Personnel at the Danville, Kentucky compressor station, including but not limited to Unknown Danville Compressor Station Operator, eventually closed the Pipeline discharge valve north of the failure site, and other personnel later closed a valve elsewhere on the line."[DE 1-1, at 6]. The fact that the person who closed the valve could have been the Operator or other personnel at the Danville Compressor Station leaves the identity of the fictitious defendant too ambiguous for purposes of diversity jurisdiction.

Moreover, while it might be reasonable to infer that a TETLP employee who works in a central Kentucky city, like Danville, is a resident of Kentucky, Section 1441(a) requires a strict interpretation, so the Operator must be disregarded for purposes of diversity jurisdiction. *See Allen*, 2012 WL 12924816, at *2 (citing *Alexander v. Electronic Data Systems Corp.*, 13 F.3d 940, 948 (6th Cir. 1994); *Curry v. U.S. Bulk Transp., Inc.*, 462 F.3d 536, 539 (6th Cir. 2006) ("Although asserting that the employees are residents of Kentucky might be a reasonable inference to draw from the facts included in the complaint, Section 1441(a) compels strict interpretation and consequently the unknown agents shall be disregarded for purposes of diversity jurisdiction.")). The Court cannot presume that someone working on a jobsite in Kentucky on one specific day is a resident and citizen of Kentucky.

Whether TETLP is better suited to ascertain the Operator's citizenship is a factor that the Court has considered, but it is merely one factor the Court must weigh when deciding whether diversity jurisdiction exists. In this instance, it is not a factor that overcomes the ambiguity of the Operator's identity and citizenship. Accordingly, Plaintiffs' Motion to Remand [DE 7] will be denied.

## B. MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT

Pursuant to Federal Rule of Civil Procedure 15(a)(2), when a motion for leave to amend, such as Plaintiffs' Motion [DE 16], is filed more than 21 days after responsive pleadings have been served, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962). "The grant or denial of a motion to amend is within the sound discretion of the Court." *Birchwood Conservancy v. Webb*, 302 F.R.D. 422, 424 (E.D. Ky. 2014) (citing *Marks v. Shell Oil Co.,* 830 F.2d 68, 69 (6th Cir. 1987)). "Congress allows the federal courts to exercise discretion in allowing amendments when the amendment would divest the court of jurisdiction through the joinder of additional parties." *Brandenburg v. Stanton Health Facilities, L.P.*, No. 5:14-183-DCR, 2014 WL 4956282, at *2 (E.D. Ky. Oct. 2, 2014) (citing 28 U.S.C. § 1447(e) ("If after removal the plaintiff seeks

to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court."); *Collins ex rel Collins v. Nat'l General Ins. Co.,* No. 10-13344, 2010 WL 4259949 (E.D. Mich. Oct. 25, 2010)).

In the present case, Plaintiffs move the Court for leave to file their proposed First Amended Complaint [DE 16-1], which seeks to add Defendants NDT Systems & Services (America), Inc., NTD Systems & Services, LLC, NDT Global, LLC, and Michael B. Clem. [DE 16]. TETLP contests that the Court should "exercise its discretion and deny joinder of Mr. Clem pursuant to 28 U.S.C. § 1447(e)" because "adding Mike Clem as a defendant would destroy diversity and divest this Court of jurisdiction under § 1332." [DE 21, at 1-2]. TETLP does not object to Plaintiffs' proposed joinder of NDT Systems & Services (America), Inc., NTD Systems & Services, LLC, and NDT Global, LLC but asks that the Court deny Plaintiffs' Motion [DE 16] due to the inclusion of Clem. *See* [DE 21].

TETLP directs the Court's attention to the fact that Plaintiffs do not seek to substitute Clem for the Operator in the original Complaint [DE 1-1]. Instead, Plaintiffs seek to join Clem in addition to the Operator, and the proposed First Amended Complaint [DE 16-1] merely describes Clem as "a Kentucky citizen and resident" who is "to the best of Plaintiffs' knowledge and belief . . . an employee and/or agent of [TETLP] and the other

10

named Defendants herein at all relevant times hereto." [DE 16-1, at 4].

Curiously, Plaintiffs' Reply to TETLP's Response in Opposition of Plaintiffs' Motion for Leave to File First Amended Complaint [DE 24] makes several conflicting statements regarding Clem and the Operator. Initially, Plaintiffs describe Clem as "an individual who is described in the initial Complaint as the 'Unknown Danville Station Operator.'" [DE 24, at 1]. Plaintiffs then assert that TETLP argues they "should not be able to identify Michael Clem as the Unknown Danville Station Operator because doing so would destroy diversity" and that TETLP is incorrect because "[j]oining Michael Clem does not destroy diversity because he was sufficiently described in the original complaint to destroy discovery in the first place—as set forth in Plaintiff's [sic] pending Motion to Remand." *Id*. Plaintiffs further allege that separate cases related to the present action "have identified Michael B. Clem as the, or one of the, [sic] Danville Station Operators." *Id*. at 2. Plaintiffs' reasoning for including Clem and the Operator as separate Defendants despite identifying one of the operators as Clem is that, as the Court noted in denying Plaintiffs' Motion to Remand [DE 7] earlier herein, "there may be more than one involved in closing the valve." *Id*. at 2-3. Lastly, Plaintiffs state, "[I]t cannot be argued that Michael B. Clem is now named to defeat diversity, as the unknown Danville Station

Operator was already named in the original complain and the Amendment merely names a previously unknown person." *Id*. at 3. In sum, Plaintiffs puzzlingly claim Clem is the Operator, Clem is not the Operator, and there may be more than one Operator.

First, Plaintiffs' argument that the Court need not consider whether joinder is appropriate because diversity jurisdiction has been destroyed since the inception of this case is unfounded because for reasons previously stated herein, the inclusion of the Operator does not destroy diversity jurisdiction. Therefore, the Court will consider the following *Hengsgens* factors to determine whether joinder is appropriate:

> (i) the extent to which the purpose of the amendment is to defeat federal jurisdiction; (ii) whether the plaintiff has been dilatory in seeking amendment; (iii) whether the plaintiff will be significantly injured if amendment is not allowed; and (iv) any other equitable factors.

*Brandenburg*, 2014 WL 4956282, at *2 (quoting *Hensgens v. Deere & Co.,* 833 F.2d 1179, 1182 (5th Cir. 1987)). "The first factor is often of 'paramount importance' because the ultimate question is whether the primary purpose of the proposed joinder is to divest the federal forum of jurisdiction." *Id*. (citations omitted).

Despite the first factor being of "paramount importance," Plaintiffs do not treat it as such in their Reply [DE 24]. Instead, Plaintiffs simply argue that TETLP cannot argue Plaintiffs are seeking to join Clem to defeat diversity jurisdiction because Clem

was already named in the original Complaint [DE 1-1], and "the Amendment merely names a previously unknown person." [DE 24, at 3]. As detailed earlier herein, Plaintiffs proposed First Amended Complaint [DE 16-1] does not, in fact, name Clem as the previously unknown Operator because the proposed amendment still includes the Operator in addition to Clem. Plaintiffs cannot argue Clem is both the Operator and not the Operator.

Not only do Plaintiffs contradict themselves, they further suggests that Clem is not the only Operator, which begs the question of why Plaintiffs did not seek to both join Clem and amend the Unknown Danville Compressor Station Operator to be Unknown Danville Compressor Station *Operators*. Plaintiffs make several conflicting arguments at once, and none of them hit their mark. All the Court is left with is Plaintiffs' vague and conclusory allegation that Clem is a Kentucky resident and citizen who worked for TETLP and other named Defendants. *See* [DE 16-1, at 4]. There is no indication that Plaintiffs are seeking to join Clem for any reason other than to defeat diversity jurisdiction and have their case remanded to state court. Thus, the first, and most important, factor weighs in favor of denying Plaintiffs' joinder of Clem.

Regarding the second factor, TETLP does not allege Plaintiffs have been dilatory in seeking the proposed amendment. However, TETLP argues the third and fourth factors weigh in its favor, and the Court agrees.

The third factor involves whether Plaintiffs will be significantly injured if the proposed amendment is not allowed. Plaintiffs claim they will be substantially harmed if they are not allowed to join Clem because they "are entitled to bring claims against Michael Clem, and have been trying to do so from the outset of this litigation." [DE 24, at 3]. For the reasons stated herein, the Court disagrees that Plaintiffs have been trying to bring claims against Clem since the original Complaint [DE 1-1], and it is unclear if Clem is even the Operator or one of the Operators. Therefore, Plaintiffs have failed to show how they would be harmed if the Court denies their Motion [DE 16], so the third factor weighs in favor of denying the request to amend the Complaint [DE 1-1].

Regarding the fourth factor, Plaintiffs argue that "it would be inequitable to disallow the amendment" because "TETLP will benefit from its own refusal to identify Michael Clem [as the Operator." [DE 24, at 3-4]. However, TETLP did not refuse to identify Clem as the Operator, assuming he is the Operator. Instead, as stated previously herein, TETLP is not allowed to reveal the identity of the Operator until the conclusion of the NTSB investigation. On the other hand, the equitable factors weigh in TETLP's favor because allowing Plaintiffs to join Clem to this action "would offer little if any benefit to Plaintiff[s'] case but would certainly destroy this Court's jurisdiction." *Barnett v.*

*MV Transp., Inc.*, No. 3:14-CV-00250-TBR, 2014 WL 1831151, at *4 (W.D. Ky. May 8, 2014). Moreover, "'[c]ases examining questions of joinder and remand emphasize that defendants have 'a significant interest in proceeding in a federal instead of an out of state forum.''" *Id.* (quoting *In re Bridgestone/Firestone, Inc., ATX, ATX II,* 129 F. Supp. 2d 1202, 1206-07 (S.D. Ind. 2001)). As TETLP correctly asserts, "TETLP has a significant interest in this forum because it is a Delaware and Texas citizen facing suit(s) in Kentucky state court brought by Kentucky residents arising out of an Incident that is well-known to the local community." [DE 21, at 13]. For the reasons stated above, the Court will deny Plaintiffs' Motion for Leave to File First Amended Complaint [DE 16].

### C. MOTION FOR STATUS CONFERENCE

Plaintiffs' Unopposed Motion for Status Conference [DE 37] argues, "[T]he parties cannot complete discovery due in part to the outstanding Motion for Leave to include additional parties and necessity to take discovery from them, should the Court allow amendment," and that the Parties currently scheduled May 21, 2021, mediation may not be fruitful if all the Parties, including any additional parties, are not present. [DE 37, at 2]. The Court is not allowing amendment, so there will be no need for discovery from additional parties or a new date for the mediation. However, Plaintiffs state that the other issue "impeding discovery is that the NTSB has yet to complete its investigation of the explosion,

15

which hinders Defendants' ability to release certain materials." *Id*. The NTSB investigation is, indeed, an impediment to the Parties completing discovery by the current May 28, 2021, deadline. Instead of scheduling a status conference, as requested, the Court will vacate its October 6, 2020, Scheduling Order [DE 27], but only insofar as it pertains to the May 28, 2021, discovery deadline. All other deadlines shall remain in place, including the Parties' obligation to meet and confer within fourteen (14) days of the completion of the NTSB investigation and file a joint status report with a proposed discovery plan, which shall include a new discovery deadline.

## II. CONCLUSION

The Court, having considered the matters fully, and being otherwise sufficiently advised,

**IT IS ORDERED** as follows:

(1) Plaintiffs' Motion to Remand to State Court [DE 7], Motion for Leave to File First Amended Complaint [DE 16], and Unopposed Motion for Status Conference [DE 37] are **DENIED**;

(2) The Court's October 6, 2020, Scheduling Order [DE 27] is **VACATED IN PART**, insofar as it pertains to the May 28, 2021, discovery deadline; and

(3) Within **fourteen (14) days** of the completion of the NTSB investigation, the Parties shall meet and confer regarding the remaining deadlines discussed in the Court's October 6, 2020,

16

Scheduling Order [DE 27] and file a joint status report with a proposed discovery plan, **including a new discovery deadline.**

This 11th day of May, 2021.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge